IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LONNIE E. LARSON,<br><br>         Plaintiff,<br><br>    vs.<br><br>LIBERTY MUTUAL FIRE<br>INSURANCE COMPANY,<br><br>         Defendant. | CIVIL NO. 19-00150 JAO-RT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Lonnie E. Larson ("Plaintiff") alleges that he was injured at work when metal that he was holding onto was struck by lightning, and that Defendant Liberty Mutual Fire Insurance Company ("Defendant"), which provided his employer's workers' compensation insurance, engaged in bad faith and caused him emotional distress in handling his underlying claim for workers' compensation benefits.  Presently before the Court are the parties' cross-motions for summary judgment.  For the following reasons, the Court DENIES Plaintiff's Motion for Summary Judgment [ECF No. 43] and GRANTS Defendant's Motion for Summary Judgment [ECF No. 35].

# I.    BACKGROUND

**A.    Facts**[1]

In February 2002, Plaintiff was employed by Altres Staffing, Inc., a temporary staffing agency, and performing work for Jas W. Glover, Ltd. when he reported he was holding onto metal that was struck by lightning.  *See* ECF No. 51 ("Pl. Opp. CSF") ¶ 1.  Plaintiff filed a workers' compensation claim and, at that time, Defendant provided workers' compensation insurance under a policy issued to Altres.  *See* ECF No. 43-2 ("Pl. MSJ CSF") ¶ 4.  On June 4, 2002, the Department of Labor and Industrial Relations ("DLIR") notified Defendant that it had determined, upon an initial review, that Plaintiff's injury on the jobsite was compensable.  *See* ECF No. 51-18 at 1.  After much delay and a hearing in 2011,[2] the Director, Department of Labor and Industrial Relations, Disability Compensation Division ("DLIR-DCD") issued a decision in September 2011 finding the claim compensable.  *See* Pl. Opp. CSF ¶ 2; ECF No. 36-4 at 136; ECF

---

[1]  Unless otherwise indicated, the following facts are undisputed.

[2]  In a previous lawsuit Plaintiff filed against Defendant arising out of his workplace injury—discussed in more detail below—Judge Mollway observed that the documents attached to Plaintiff's pleadings in that case "indicate that much of the delay at the administrative level relate[d] to [Plaintiff's] alleged inability to participate in the administrative proceeding and his unwillingness to undergo an independent medical examination."  *Larson v. Liberty Mut. Fire Ins. Co.* (*Larson I*), Civil No. 09-00308 SOM/BMK, 2010 WL 520630, at *1 (D. Haw. Feb. 11, 2010), *aff'd*, 509 F. App'x 641 (9th Cir. 2013).

No. 51-18 at 2–8.  That decision indicates Plaintiff's employer denied his claim.

*See* ECF No. 51-18 at 2.[3]  Plaintiff's employer and its insurance carrier, Defendant,

appealed that decision to the Labor and Industrial Relations Appeals Board

("LIRAB").  *See* Pl. Opp. CSF ¶ 3; ECF No. 36-4 at 136.

In the interim, Plaintiff filed a series of civil lawsuits against Defendant and

others.  In 2009, Plaintiff filed suit in this District against Defendant, alleging

claims for bad faith and discrimination under the Americans with Disabilities Act

("*Larson I*").  *See* Pl. Opp. CSF ¶ 4.  Specifically, he alleged Defendant engaged in

bad faith insurance practices in defending against his underlying workers'

compensation claim, including by (a) denying his claim without a legitimate reason

and (b) refusing to pay workers' compensation benefits for his medical expenses.

*See* Pl. Opp. CSF ¶¶ 5–6.  Relevant here, in February 2010, Judge Mollway

dismissed Plaintiff's bad faith claim without prejudice because his underlying

workers' compensation claim—which was within the exclusive jurisdiction of the

DLIR—was still being adjudicated, and so decided that resolution of the bad faith

claim should await an ultimate determination of his underlying benefits claim.  *See*

*Larson I*, 2010 WL 520630, at *6–9.  Final judgment was ultimately entered

---

[3]  In his Complaint, Plaintiff alleges that Defendant initially accepted the claim on
March 21, 2002, but then changed the relevant form to indicate "liability denied."
*See* ECF No. 1 ¶¶ 17–18; *see also* ECF No. 1-4.

3

against Plaintiff in May 2011, *see* Pl. Opp. CSF ¶ 9, and Plaintiff filed an appeal, *see* ECF No. 36-4 at 128.

From April 2011 through September 2012, Plaintiff filed four additional lawsuits against Defendant in state and federal court in Hawaiʻi. *See* Pl. Opp. CSF ¶¶ 10–13. These lawsuits involved allegations that Defendant acquired Plaintiff's personal and private communications and was improperly retaining and using these confidential documents during the course of Defendant's refusal to pay him workers' compensation benefits. *See* ECF No. 36-4 at 67–87, 92, 95, 98; *see also* Pl. Opp. CSF ¶ 2A;[4] Pl. MSJ CSF ¶ 13. However, some lawsuits also brought claims for intentional infliction of emotional distress that "occurred over the protracted period of time that [Defendant] refused to pay workers' compensation benefits to Plaintiff." ECF No. 36-4 at 84; *see also id.* at 92 (alleging mental and emotional distress).

On May 11, 2015, Plaintiff entered into a Release, Settlement, and Indemnification Agreement ("May 2015 Settlement") with Defendant. *See* ECF

---

[4] Aside from responding to each other's statement of facts, each party also asserted additional facts. However, neither party consecutively numbered these additional facts, instead choosing to restart their numbering at "1." For ease of reference in determining whether Plaintiff has admitted/disputed a certain fact, the Court often cites to Plaintiff's response to Defendant's facts ("Pl. Opp. CSF"). But to avoid confusion between Plaintiff's *response* to "Fact No. 2" and Plaintiff's *additional* "Fact No. 2," the Court will designate Plaintiff's *additional* facts as, e.g., "¶ 2A." The same numbering will be used to differentiate between Defendant's *response* to a fact and its *additional* facts. *See* ECF No. 50-1.

No. 36-4 at 128–34.  The May 2015 Settlement recites that Plaintiff asserted claims against Defendant "arising out of [its] handling of [his] claim for Workers Compensations Benefits under [Defendant's] Policy" issued to Plaintiff's employer that related to the February 2002 incident where Plaintiff was allegedly struck by lightning.  *See id.* at 128.  The May 2015 Settlement recited the five lawsuits detailed above that Plaintiff filed against Defendant, collectively referred to as "the Lawsuits," wherein Plaintiff asserted claims "alleging extra-contractual damages," and indicated that Plaintiff and Defendant agreed to settle various claims between them as reflected in the agreement and without an admission of liability by Defendant.  *See id.* at 128–30.  Particularly relevant, the May 2015 Settlement provided:

> 1. [Plaintiff] agrees to release and forever discharge [Defendant] from any and all actions, causes of action, suits at law or in equity, liabilities, claims, demands, or damages of whatsoever kind or nature, including general, special, and/or punitive damages, in any manner resulting from, arisen out of, arising out of, to arise out of, connected with, or traceable either directly or indirectly to:
>
>> (a) the adjustment, investigation, handling, payment, and/or settlement of claims arising out of the Incident,
>>
>> (b) the claims and/or allegations which were raised or could have been raised by Releasor and/or by any other person or entity in the Lawsuits.
>
> The claims enumerated in paragraph 1, <u>supra</u>, are hereinafter referred to collectively as the "Claims Released."

5

> Provided, however, that the Claims Released shall not include the claim for Workers Compensation Benefits under the LMFIC Policy.

*See id.* at 130–31.  Plaintiff, in return, received $5,000 and in June 2015 deposited or cashed his settlement check.  *See* Pl. Opp. CSF ¶ 24; ECF No. 36-4 at 130.  As discussed in detail below, the parties dispute which claims were released in the May 2015 Settlement.  *See, e.g.*, Pl. Opp. CSF ¶ 3A.

Nearly two years later, on March 28, 2017, the parties and Plaintiff's employer agreed to settle his workers' compensation claim and, in May 2017, LIRAB approved and entered a settlement between Plaintiff, his employer, and Defendant regarding that claim ("2017 Settlement").  *See* Pl. Opp. CSF ¶ 19; ECF No. 36-4 at 135–45.  The settlement included reimbursement of medical payments made by a private insurer, funding of a workers' compensation Medicare Set Aside, and creation of an annuity to fund the Medicare Set Aside into the future.  *See* Pl. Opp. CSF ¶ 20.  In the 2017 Settlement, Plaintiff expressly agreed he waived all of his rights to workers' compensation benefits under Chapter 386 of the Hawai'i Revised Statutes ("HRS").  *See* Pl. Opp. CSF ¶ 21.  Plaintiff contends that Defendant agreed to settle his workers' compensation claim in July 2015, but then engaged in two years of delay and further bad faith before finally reaching a settlement in March 2017.  *See* Pl. Opp. CSF ¶¶ 5A–6A; Pl. MSJ CSF ¶ 21.

6

**B.     Procedural History**

Plaintiff filed the present lawsuit against Defendant on March 26, 2019

alleging (1) breach of the duty of good faith and fair dealing; (2) bad faith refusal

to pay medical costs; and (3) intentional infliction of emotional distress ("IIED")

stemming from Defendant's alleged bad faith claims handling.  *See* ECF No. 1.[5]

Before the Court are the parties' cross-motions for summary judgment.  *See* ECF

Nos. 35, 43.[6]  A telephonic hearing was held on the cross-motions on June 5, 2020.

*See* ECF No. 62.

## II.     LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or

defense—or the part of each claim or defense—on which summary judgment is

sought.  The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  *In re*

*Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  When the moving

---

[5]  Plaintiff categorizes his causes of action for "bad faith" handling and "bad faith" refusal to pay medical costs as one for "bad faith," and analyzes them under the same law and facts.  *See* ECF No. 43-1 at 20–22.  The Court will therefore do the same.

[6]  Neither party complied with the General Civil Case Procedures before Judge Otake regarding the pre-filing conference under Local Rule 7.8.  *See* ECF No. 35 at 17; ECF No. 43-1 at 12.  In the future, a failure to comply with the Court's requirements will result in motions being stricken or denied.

party bears the burden of proof at trial, he must come forward with evidence that would entitle him to a directed verdict if the evidence went uncontroverted at trial, and must establish the absence of a genuine issue of fact on each issue material to his case. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). In contrast, when the non-moving party bears the burden of proof, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. *See id.* But the moving party need not disprove the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. *Id.* at 323–24; Fed. R. Civ. P. 56(c)(1).

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992) (citation omitted). Rather, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (internal quotation marks and ellipsis omitted).

## III.   DISCUSSION

**A.   Plaintiff's Motion for Summary Judgment**

Plaintiff seeks summary judgment in his favor on all claims, arguing that Defendant admitted liability because it failed to file timely responses to his requests for admission ("RFA"), meaning all such RFAs are deemed admitted. Defendant does not dispute that its RFA responses were untimely under Rule 36(a)(3); rather, it asks the Court to permit it to withdraw or amend its responses pursuant to Rule 36(b).  The Court concludes, in its discretion, that Defendant should be permitted to withdraw or amend its responses, and that Plaintiff's motion that depends on these admissions must therefore be DENIED.

**1.   Relevant Background**

Plaintiff served RFAs on Defendant on November 27, 2019.  *See* Pl. MSJ CSF ¶ 24.  Rule 36 provides:

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3).  Defendant's responses were due by January 2, 2020.  *See* Pl. MSJ CSF ¶ 24; *see also* Fed. R. Civ. P. 6(d); ECF No. 25.  Defendant did not serve its responses until four days later, on January 6, 2020.  *See* Pl. MSJ CSF ¶ 26.  According to Defendant, a "clerk in-training" failed to calendar the deadline

correctly and circulate the RFAs to the responsible attorneys—meaning defense counsel was apparently unaware they had been served.  *See* ECF No. 50-1 at 9–11 ("Goto Decl.") ¶ 4.  Defense counsel claim they first became aware that Plaintiff served RFAs during correspondence with opposing counsel on other matters between December 11 and December 13.  *See* ECF No. 50-2 at 1–3.  When Plaintiff's counsel re-sent the RFAs by email as a courtesy, he mistakenly indicated they had initially been served on November 6, 2019, *see id.* at 1; still, the attached document did indicate the correct service date of November 27, 2019, *see* ECF No. 53 at 9.  Defense counsel claim they assumed Plaintiff's counsel must have meant that service occurred on *December* 6, 2019 and so were due on January 6, 2019—and therefore reached out to Plaintiff's counsel on January 6, 2019 to seek an extension, which Plaintiff's counsel refused given the responses were already four days late.  *See* ECF No. 50-1 ("Def. Opp. CSF") ¶¶ 4A–6A.  Defense counsel thus served the RFA responses on January 6, 2019.  *See id.* ¶ 6A.[7]

---

[7]  The Court pauses to note defense counsel's attempt to deflect blame onto their staff.  On the same day Plaintiff served the RFAs, *counsel* received an ECF notification via email confirming service of the RFAs.  *See* ECF No. 43-6 at 141.  Yet, they still failed to take obvious steps to ascertain the date of service—such as reading their emails, checking the docket, confirming the date on the RFAs provided by email, or even conferring with opposing counsel.  In short, the buck always stops with the attorneys—particularly where, as here, their lack of diligence far outweighs any initial mistakes a clerk in-training may have made.

### 2. Analysis under Rule 36(b)

Plaintiff argues all the RFAs are deemed admitted under Rule 36(a)(3) and because Defendant never filed a formal motion to withdraw those admissions under Rule 36(b). Defendant, in contrast, argues that the Court can construe its opposition to Plaintiff's motion as a motion under Rule 36(b). That rule permits a district court "on motion" to exercise its discretion to grant relief from an admission made under Rule 36(a) when (1) "it would promote the presentation of the merits of the action," and (2) "the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

The Court first agrees with Defendant that it can properly construe its opposition brief as a motion under Rule 36(b). Plaintiff cites no binding authority indicating that doing so would be improper. To the contrary, the Ninth Circuit has explicitly noted that *Conlon v. United States*, 474 F.3d 616 (9th Cir. 2007), a case on which Plaintiff relies, "does not require that a request for relief under Rule 36(b) be brought in a separate motion." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016) (discussing *id.*); *see also Whitsitt v. Club Res. Grp.*, 357 F. App'x 877, 878 (9th Cir. 2009) (noting district court did not abuse its

discretion in construing an opposition to a motion for summary judgment as a motion to withdraw admissions under Rule 36).[8]

The Court further concludes that granting Defendant relief under Rule 36(b) is warranted.  Under the first prong, it is apparent that Plaintiff's motion relies on Defendant's admissions of liability.  *See, e.g.*, ECF No. 43-1 at 15–20, 22–23; Pl. MSJ CSF ¶¶ 28–33.  Because upholding these admissions would eliminate the need for a presentation on the merits, Defendant has satisfied the first prong of the Rule 36(b) test.  *See Conlon*, 474 F.3d at 622.

Plaintiff has the burden of proving prejudice under the second prong.  *See id.* "[R]eliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice."  *Id.* at 624.  This is because mere inconvenience does not necessarily rise to the level of prejudice.  *See Hadley v. United States*, 45 F.3d 1345, 1347, 1349–50 (9th Cir.1995) (concluding government was not prejudiced where plaintiff served responses over a month late after the government had

---

[8] District courts in the Ninth Circuit have similarly construed oppositions to motions for summary judgment, as well as other types of motions, as a motion to withdraw under Rule 36(b).  *See, e.g.*, *Avitus, Inc. v. NEA Delivery, LLC*, CV 17-69-BLG-TJC, 2018 WL 4301369, at *5 (D. Mont. Sept. 10, 2018); *Elements Behavioral Health, Inc. v. Marcus*, LA CV14-08760 JAK (RZx), 2017 WL 5634854, at *4–5 (C.D. Cal. Sept. 6, 2017); *Hassan v. Wiedenfeld*, No. C11-2026-JCC, 2013 WL 4094838, at *3, *11, *13 (W.D. Wash. Aug. 13, 2013); *Sullivant v. Spectrum Med. Servs.*, No. CV 11-00119-M-JCL, 2013 WL 265992, at *5 (D. Mont. Jan. 23, 2013).

already relied on deemed admissions in determining how to depose plaintiff); *see also Sonoda v. Cabrera*, 255 F.3d 1035, 1039–40 (9th Cir. 2001) (affirming decision to permit withdrawal where motion to withdraw was made before trial and plaintiff would not be hindered in presenting evidence to the factfinder).  Instead, courts have found prejudice where, for example, the request to withdraw came during trial after the party had already relied heavily on the admission and nearly rested its case.  *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985).

Plaintiff has not met his burden of demonstrating prejudice.  He argues Defendant prejudiced his ability to expeditiously pursue his case, forcing him to agree to a continuance of the trial date;[9] however, this does not demonstrate the required prejudice in proving his case at trial (for example, by impeding his ability to present witnesses or evidence).[10]  *See* ECF No. 43-1 at 13; ECF No. 53 at 14–15. Plaintiff was aware Defendant did not intend to admit liability four days after the RFA response deadline when it served its belated responses.  And while Defendant

---

[9]  The Court notes that the relevant Minutes continuing the trial in this case indicate only that trial was continued because the parties had or would be filing motions for summary judgment that could be dispositive—and the parties wanted to avoid potentially unnecessary litigation costs.  *See* ECF No. 39.  There is no indication that Defendant's delayed RFA responses was the impetus for a trial continuance, nor does Plaintiff cite any evidence to support this claim.  *See* ECF No. 43-1 at 13; ECF No. 53 at 14–15.

[10]  Nor is Defendant's alleged delay in paying Plaintiff's claim—i.e., the merits of this case—relevant to the prejudice inquiry under Rule 36(b).  *See* ECF No. 53 at 14–15.

did delay in seeking a request to withdraw under Rule 36(b), by the date of this ruling permitting withdrawal, the discovery deadline is still over two months away and trial is over four months away, meaning Plaintiff has ample opportunity to pursue further discovery and prepare for trial. *See* ECF Nos. 39, 47. And, as noted above, the parties agreed to await a ruling on these dispositive motions before engaging in more costly litigation efforts—undercutting Plaintiff's argument that his discovery efforts have been impeded by Defendant's delay. *See* ECF No. 39.

The Court therefore determines that Defendant has demonstrated the two prongs necessary to obtain relief under Rule 36(b). Defendant also asks the Court to consider other, discretionary factors. Specifically, the Ninth Circuit has stated that district courts "may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." *Conlon*, 474 F.3d at 625; *see also Friedman*, 833 F.3d at 1185 (noting that although consideration of the two factors listed in Rule 36(b) is mandatory, the rule does not mandate that relief be granted only upon a showing of good cause; rather, district courts *may* consider good cause and other factors). As intimated above, the Court is not inclined to find good cause for Defendant's delay because it appears to be the result of an unexcused lack of diligence. Even so, there is no evidence that the four-day delay was a litigation tactic or an attempt at gamesmanship. Moreover, as discussed in detail below with regard to

14

Defendant's affirmative motion, Defendant has a strong case on the merits. Therefore, the Court concludes in its discretion that Defendant should be permitted to withdraw its admissions.  Given Plaintiff's motion relies on these admissions, it is therefore DENIED.

**B.     Defendant's Motion for Summary Judgment**

Defendant argues that is it entitled to judgment in its favor on four grounds that do not require—and indeed, do not allow—the Court to address the merits of Plaintiff's claims, namely:  (1) the parties' May 2015 Settlement bars the claims; (2) the judgment against Plaintiff in *Larson I* bars this suit by res judicata; (3) Plaintiff failed to exhaust his administrative remedies; and (4) the claims are untimely.  The Court concludes that the May 2015 Settlement bars Plaintiff's claims, which are also untimely, and thus need not address Defendant's other arguments.

**1.     The May 2015 Settlement**[11]

Defendant argues that the parties' May 2015 Settlement bars Plaintiff's claims.  Plaintiff contends that he did not intend to settle his present claims and that the agreement is ambiguous.  "A properly executed settlement agreement generally precludes future litigation for its parties."  *State Farm Fire & Cas. Co. v.*

---

[11]  The parties agree the agreement must be interpreted under Hawaiʻi law.  *See* ECF No. 48 at 22; ECF No. 52 at 10 n.1.

*Pac. Rent-All, Inc.*, 90 Hawaiʻi 315, 323, 978 P.2d 753, 761 (1999) (citation omitted).  "It is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous."  *Id.* at 324, 978 P.2d at 762 (citation omitted).  Contractual terms in a settlement agreement must be interpreted according to their plain, ordinary meaning and accepted use in common speech.  *See id.*  To determine whether an ambiguity exists, a court must look only at the four corners of the document.  *See id.*  The parties' mere disagreement over the meaning of a settlement agreement or its terms does not render clear language ambiguous.  *See id.*  When an ambiguity exists such that there is doubt as to the parties' intent, intent is a question for the trier of fact; still, in the absence of ambiguity, "a question of construction arising upon the face of the instrument is for the court to decide."  *Found. Int'l, Inc. v. E.T. Ige Constr., Inc.*, 102 Hawaiʻi 487, 497, 78 P.3d 23, 33 (2003) (citations omitted).

Moreover, "[t]he parol evidence rule 'precludes the use of extrinsic evidence to vary or contradict the terms of an unambiguous and integrated[12] contract.'" *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawaiʻi 36, 45, 305 P.3d 452, 461 (2013) (quoting *Pancakes of Hawaii, Inc. v. Pomare Props. Corp.*, 85 Hawaiʻi 300, 310, 944 P.2d 97, 107 (App. 1997)); *Pancakes*, 85 Hawaiʻi at 310,

---

12  Plaintiff does not argue that the May 2015 Settlement agreement is not fully integrated.

944 P.2d at 107 ("The parol evidence rule applies when there is a single final memorial of the understanding of the parties; when that takes place, all prior and contemporaneous negotiations are excluded and are superseded by such written memorial." (footnote and citation omitted)).  "Therefore, absent fraud, duress, mistake or ambiguity, extrinsic evidence is excluded once it is determined that a contract is fully integrated."  *Pac. Rent-All, Inc.*, 90 Hawaiʻi at 324, 978 P.2d at 762 (citations omitted).

The May 2015 Settlement agreement unambiguously bars Plaintiff's claims in this suit.  As recited above, it provides:

> 1. [Plaintiff] agrees to release and forever discharge [Defendant] from any and all actions, causes of action, suits at law or in equity, liabilities, claims, demands, or damages of whatsoever kind or nature, including general, special, and/or punitive damages, in any manner resulting from, arisen out of, arising out of, to arise out of, connected with, or traceable either directly or indirectly to:
>
> > (a) the adjustment, investigation, handling, payment, and/or settlement of claims arising out of the Incident,[13]
> >
> > (b) the claims and/or allegations which were raised or could have been raised by Releasor and/or by any other person or entity in the Lawsuits.

---

[13]  The Incident is defined as the incident on February 26, 2002 when Plaintiff was allegedly struck by lightning.  *See* ECF No. 36-4 at 128.

17

ECF No. 36-4 at 130–31.  Plainly, this covers Plaintiff's claims in this suit that allege damages based on the tactics Defendant used and delay involved in Defendant's investigation, handling, and eventual settlement and payment of Plaintiff's claim for workers' compensation benefits.[14]

Plaintiff argues, however, that the May 2015 Settlement does not control because some of Defendant's alleged bad faith occurred after the agreement was executed in May 2015.  Notably, Plaintiff has *not* argued that, under Hawaiʻi law, a release of future claims, including those based on conduct subsequent to the date of a settlement agreement, is unenforceable as a matter of public policy or otherwise. *Compare, e.g.*, *Island Helicopters-Kauai, Inc. v. Tesoro Hawaii Corp.*, 130 Hawaiʻi 347, 310 P.3d 1048 (table), No. 30736, 2012 WL 503799, at *2–3 (App. Feb. 13, 2012) (mem.) (upholding settlement and concluding consideration for it consisted of plaintiff's release of *future* claims, given such claims would not be barred as untimely because the defendant could conceivably be liable for a continuous tort or plaintiff "could experience a new . . .problem" that would restart the statute of limitations), *with W. Chance # 2, Inc. v. KFC Corp.*, 957 F.2d 1538,

---

[14]  By Plaintiff's own account, this includes his IIED claim.  *See* ECF No. 48 at 29 (describing IIED claim as "based on [Defendant's] mishandling of [his] claim and failure to comply and carryout [sic] the Settlement terms"); *see also* ECF No. 43-1 at 23 ("[Defendant's] conduct during the course of their handling of the workers compensation claim first from 2002 through 2015, then continuing from 2015-2017, was admittedly intentional, and caused [Plaintiff] severe emotional distress[.]").  Nor has he argued to the contrary—except as discussed below.

1543 (9th Cir. 1992) ("[T]he terms of the General Release seem to limit its application to claims held by Western Chance at the time the General Release was executed.  It did not, and probably could not, operate to extinguish future claims." (citing California and Oklahoma law)), *and Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 434 (6th Cir. 2009) (noting employee may not prospectively waive his rights to bring claims against employer's future violations of discrimination laws).  The Court therefore presumes that such a release is enforceable under Hawaiʻi law.

Plaintiff instead seems to argue that the plain language of the May 2015 Settlement does not release such claims.[15]  However, the language unambiguously covers future claims, including those based on the alleged bad faith that occurred after 2015 here.  Plaintiff expressly agreed to release and "forever discharge" Defendant from any claim, cause of action, or damages "in any manner resulting from, arisen out of, arising out of, *to arise out of, connected with, or traceable* either directly or indirectly to . . . the adjustment, investigation, handling, payment, and/or settlement of claims arising out of the Incident[.]"  ECF No. 36-4 at 130–31

---

[15]  Even this is unclear.  Plaintiff cites as an example the fact that Defendant has retained certain confidential documents after May 2015.  *See* ECF No. 48 at 19.  According to Plaintiff's own representations, though, claims related to these confidential documents were part of the May 2015 Settlement.  *See* ECF No. 48 at 12 ("Hence other than the first case (CV09-00308 SOM BMK), each of the subsequent cases were directed specifically at return of the Confidential Documents[.]").  Yet, Plaintiff has not pointed to any term in the May 2015 Settlement requiring Defendant to turn over these documents or cease using them.

(emphasis added).  Thus, Plaintiff agreed to release not only his actual bad faith claims but also all potential claims that could arise out of Defendant's handling of his workers' compensation claim that, at the time of the May 2015 Settlement, was still ongoing and yet to be settled or paid.[16]  *See Island Helicopters-Kauai*, 2012 WL 503799, at *2–3  (interpreting release of all claims "arisen, arising, or to arise out of the 'subject claims'" as precluding plaintiff from "pursuing any potential claims against the [defendant] related to the [same] problems" and observing this included if "Plaintiffs . . . experience[d] a new . . . problem, which would start anew the running of the statute of limitations") (citation omitted).[17]

---

[16]  Because Plaintiff's workers' compensation claim undoubtedly arose out of the Incident and remained unresolved, any claim related to its eventual settlement and payment must necessarily have been a potential claim that could possibly be brought in the future.  Indeed, in looking at the agreement as a whole, it clearly distinguishes between the claims Plaintiff already brought ("*arising* out of [Defendant's] *handling* of [Plaintiff's] claim for Workers Compensation Benefits") and those being released, which include claims Plaintiff could have brought or would be able to bring in the future ("resulting from, arisen out of, arising out of, *to arise out of*, connected with, or traceable either directly or indirectly to . . . the *adjustment*, investigation, handling, *payment, and/or settlement* of claims arising out of the Incident").  *See* ECF No. 36-4 at 128, 130–31 (emphasis added).

[17]  *See also Arise*, Merriam-Webster (defining "arise" to mean "to begin to occur or to exist:  to come into being or to attention"), http://merriam-webster.com (last visited June 30, 2020); *Accrue*, Black's Law Dictionary (11th ed. 2019) (defining "accrue" to mean "[t]o come into existence as an enforceable claim or right; *to arise*" (emphasis added)).

Plaintiff also specifically agreed to release Defendant "from any and all claims that he *may have* against [it] . . . including but not limited to claims for . . . any other past or *future damages* claimed or that *could be claimed* by [Plaintiff] in connection with the Claims Released." *See* ECF No. 36-4 at 133 (emphases added);[18] *see also In re Exxon Valdez*, No. 3:89-0095-cv-HRH, 2007 WL 9717369, at *13–16 (D. Alaska July 17, 2007) (emphasizing that plaintiffs released claims they "may have" and noting that "[m]ay" means "to be a possibility" and thus that releasing such "[p]ossible" rights implied release of "future rights or rights not presently existing"—and thus rejecting their argument that the release applied only to claims that existed at the time of the release and concluding a 2003 release precluded claim that became actionable in 2006 (brackets, emphasis, and footnote omitted)).

Along these lines, Plaintiff also agreed to release both his known damages as well as unknown and unexpected ones, as follows:

> Inasmuch as all of the injuries, damages and losses may not be fully known and hence may be more numerous or more serious than is now understood or expected, [Plaintiff] agree [sic] that this Release applies to all injuries, damages and losses resulting

---

[18] *See also* ECF No. 36-4 at 131 (agreeing to "forever hold [Defendant] harmless" against any claims brought by Plaintiff or anyone acting on his behalf "against the parties herein released for damages incurred by [Plaintiff] on account of the Claims Released, the events and occurrences alleged in the subject Lawsuits, and loss or damages sustained *or which may be sustained* by [Plaintiff] in consequence of said events and occurrences *and the matters covered by this Release*" (emphases added)).

> from matters related to the subject accident, *even though now unanticipated, unexpected and unknown*, as well as to all injuries, damages and losses which have already developed and which are now known and anticipated.  [Plaintiff] makes this compromise with full knowledge of the facts and possibilities of any lawsuit, commenced or that could be commenced, and executes and delivers this Release being fully informed as to its terms, content and effect.

ECF No. 36-4 at 132 (emphasis added); *cf. Duni v. United Techs. Corp./Pratt & Whitney Aircraft Div.*, 239 Conn. 19, 29, 682 A.2d 99, 104 (1996) (holding husband's release precluded his widow's claim, even though her right to bring a claim did not arise until his death after the release was executed, because his death was a reasonably foreseeable consequence of his injury; contrasting case where employee who settled one claim regarding asbestos exposure was permitted to bring a subsequent claim based on additional exposure that occurred after executing initial release).  Indeed, Plaintiff himself categorizes his claims here as based on a continuing wrong.  *See, e.g.*, ECF No. 48 at 27.  The Court therefore rejects Plaintiff's argument that the May 2015 Settlement applied only to claims and conduct that existed at that time.

Plaintiff also argues that the May 2015 Settlement is ambiguous in two ways.  First, Plaintiff points to subparagraphs (a) and (b) recited above and argues that their inclusion renders the settlement contradictory and ambiguous.  However, it is clear that where, as here, a claim meets the criteria of paragraph 1 and subparagraph (a), it is covered as a released claim.  Plaintiff argues that he only

believed he was releasing the claims raised in the lawsuits that fell under subparagraph (b),[19] and not the broader set of claims articulated in subparagraph (a).  *See* ECF No. 48 at 23.  But this interpretation would render subparagraph (a) superfluous.  *See Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawaiʻi 286, 297, 141 P.3d 459, 470 (2006) (noting Hawaiʻi Supreme Court has "long expressed [its] disapproval of interpreting a contract such that any provision be rendered meaningless" (citation omitted)); *see also* Restatement (Second) of Contracts § 203 (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]").  In addition, the clause following these subparagraphs summarizes the "Claims Released" as the "claims *enumerated* in paragraph 1, <u>supra</u>," further indicating that the subparagraphs must be read in the disjunctive.  ECF No. 36-4 at 131 (emphasis added).  The Court therefore rejects Plaintiff's argument that these provisions are ambiguous.

Next, Plaintiff argues the May 2015 Settlement is ambiguous based on a carve-out providing that the released claims enumerated in paragraph 1 "shall not include the claim for Workers Compensation Benefits under the LMFIC Policy."

---

[19]  Notably, this would still encompass a bad faith claim, which was brought in *Larson I*, and a claim for intentional infliction of emotional distress, brought in the second federal lawsuit—both of which were included in the May 2015 Settlement.  *See* Pl. Opp. CSF ¶¶ 4, 6; ECF No. 36-4 at 84, 128.

*Id.*  Plaintiff argues this carve-out includes his bad faith claim.  This argument is without merit.  A "claim for Workers Compensation Benefits" can only be understood as a claim for benefits under an employer's workers' compensation policy, i.e., a benefits claim under Chapter 386, HRS exclusively within the jurisdiction of the DLIR.  Plaintiff's argument that this carve-out saved *both* his claim for benefits *and* a bad faith claim for damages is belied by the fact that it is explicitly limited to single "claim" for "Benefits" rather than for multiple *claims*, or more broadly, claims for *damages*.  Moreover, a bad faith claim cannot solely be understood as one "under" a policy; instead, it can be a tort independent of an insurer's contractual obligations to pay benefits under a policy.  *See Willis v. Swain*, 129 Hawai'i 478, 492, 304 P.3d 619, 633 (2013); *Miller v. Hartford Life Ins. Co.*, 126 Hawai'i 165, 174–75, 268 P.3d 418, 427 (2011).  Other portions of the May 2015 Settlement further support that the carve-out applied only to a workers' compensation claim, which must be understood as separate and distinct from Plaintiff's claims for damages here.  The outset of the agreement clearly delineated between the two, reciting that Plaintiff asserted "*claims* against [Defendant] arising out of [its] handling of [Plaintiff's] *claim for Workers Compensation Benefits under [Defendant's] Policy*," and later describing the "*claims* in the Lawsuits" as alleging "extra-contractual damages."  ECF No. 36-4 at 128, 129.  The May 2015 Settlement agreement can therefore only be

24

understood as carving out a claim for workers' compensation benefits—not Plaintiff's present claims.  And because there is no ambiguity, the Court may not consider either Plaintiff's declaration or the email correspondence between the parties that he asserts clarify the alleged ambiguous terms of the Settlement.

Plaintiff also makes a cursory reference to reformation of the May 2015 Settlement based on mistake.  *See* ECF No. 48 at 23.  However, he cites cases indicating that such a remedy is appropriate when there is (a) a mutual mistake, or (b) a mistake on the part of one party and fraud or inequitable conduct on the part of the other party.  *See id.* (quoting *Gabriel v. Island Pac. Acad., Inc.*, 140 Hawai'i 325, 340, 400 P.3d 526, 541 (2017)).  Plaintiff does not allege or even submit evidence to raise a triable issue that either scenario exists here.  Therefore, he has not raised a triable issue regarding the enforceability of the May 2015 Settlement on this basis.[20]  Because the May 2015 Settlement covers Plaintiff's claims in this lawsuit, and because Plaintiff has failed to dispute Defendant's argument that this alone warrants judgment in its favor, the Court concludes that Defendant is entitled to summary judgment and GRANTS Defendant's motion on this basis.

---

[20]  Plaintiff also makes a cursory reference to there being no "meeting of the minds," but fails to make clear whether he is presenting that argument here and, if he is, fails to direct the Court to any evidence in support of this argument.  *See* ECF No. 48 at 22 (citing only a statement of law without any argument, analysis, or evidence to explain why it applies here).  The Court therefore will not consider it.

### 2.     Untimeliness of Plaintiff's Claims

Alternatively, Plaintiff's claims are untimely.  Plaintiff agrees that a 2-year statute of limitations applies to his claims, further acknowledging that such claims accrue on the date of injury.  *See* ECF No. 48 at 27.  When asked at the hearing to articulate what facts Plaintiff relied on for damage accrual within that statutory period, Plaintiff's counsel was unable to point to any specific facts or allegations.

Nor is the Court persuaded by Plaintiff's citation to a handful of California decisions.  First, Plaintiff makes no effort to demonstrate that Hawai'i law is in accord.  *See* ECF No. 48 at 27–28.  Regardless, Plaintiff cites cases that hold that a claim under an insurance contract (and thus not even for a tort) is tolled until the insurer formally denies the insured's claim because it would be unfair to count the time it takes the insurer to investigate a claim against the insured's statute of limitations.  *See, e.g.*, ECF No. 48 at 27 (citing *Prudential-LMI Commercial Ins. v. Superior Court*, 51 Cal. 3d 674, 798 P.2d 1230 (1990), *as modified* (Dec. 13, 1990)).  Here, though, it is undisputed that Plaintiff's claim was denied at least by September 9, 2011—as the Director of the DLIR acknowledged.  *See* ECF No. 51-18 at 2 ("The employer stated the claim for the above injury was denied because the claimant did not sustain a work-related injury on 2/26/2002 arising out of and in the course of his employment with employer.").  Thus, this tolling doctrine does

not save Plaintiff's untimely claims, and Defendant is entitled to judgment in its favor on this basis, as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment [ECF No. 43] and GRANTS Defendant's Motion for Summary Judgment [ECF No. 35].

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, July 6, 2020.



_____

Jill A. Otake
United States District Judge

Civil No. 19-00150 JAO-RT, *Larson v. Liberty Mutual Fire Insurance Company*; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEDENDANT'S MOTION FOR SUMMARY JUDGMENT

27